**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**JACQUELINE DAVENPORT** *

**Plaintiff,** * **Case No. 8:14-cv-02369-PJM**

**v.** *

**WELLS FARGO BANK, N.A., *et al.*** *

**Defendants.** *

* * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Defendant Wells Fargo Bank, N.A., as successor by merger to Wells Fargo Home Mortgage, Inc. ("Wells Fargo"),[1] by undersigned counsel and pursuant to Fed. R. Civ. Proc. 12(b)(6), respectfully submits this Memorandum in support of its Motion to Dismiss the Complaint filed by Plaintiff Jacqueline Davenport ("Plaintiff").

**INTRODUCTION**

The Complaint, when stripped of its conclusory allegations, is nothing more than an impermissible challenge to Plaintiff's unsuccessful effort to obtain mortgage assistance under the Making Home Affordable Program – specifically a modification under the Home Affordable Modification Program ("HAMP") and a refinance under the Home Affordable Refinance Program ("HARP"). The law in Maryland is clear that there is no cognizable private cause of action for a lender's refusal to grant assistance under the Making Home Affordable Program. Nor can Plaintiff

---

[1] "Wells Fargo Home Mortgage" is named as a defendant. No entity exists by that name. Wells Fargo assumes that this reference is a misnomer and that Plaintiff intended to name "Wells Fargo Home Mortgage, Inc." On May 8, 2004, Wells Fargo Home Mortgage, Inc. merged with Wells Fargo Bank, N.A., and is currently a division of Wells Fargo Bank, N.A. The Certificate of Filing maintained by the Maryland State Department of Assessments and Taxation is attached as **Exhibit 1**. Wells Fargo Bank, N.A. is therefore the proper party to this action and responds accordingly. Additionally, Count IX of the Complaint alleges a claim for "Respondeat Superior," in which Plaintiff seeks to hold Wells Fargo Bank, N.A., responsible for the alleged actions of "Wells Fargo Home Mortgage." Compl. ¶¶ 61, 62. Given the just-described corporate structure, Count IX of the Complaint is superfluous and should be dismissed.

avoid this well-settled Maryland law by repackaging her claims under the Maryland Consumer Protection Act ("MCPA") or other common law causes of action. Further, Plaintiff cannot maintain her claim for an alleged violation of the Real Estate Settlement Procedures Act ("RESPA") because her correspondence with Wells Fargo did not constitute "qualified written requests" as defined by RESPA. Nor has Plaintiff alleged sufficient damages to maintain her RESPA claim. Finally, Plaintiff cannot maintain any of the common law causes of action she alleges against Wells Fargo because she has not, and indeed cannot, allege facts to show any cognizable duty owed to her by Wells Fargo. In short, all of Plaintiff's claims fail as a matter of law and should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ALLEGATIONS IN THE COMPLAINT[2]

On or about September 10, 2004, Plaintiff obtained a loan (the "Loan") for the purchase of real property located at 427 Boyd Avenue, Takoma Park, Maryland 20912 (the "Property"). The Loan was secured by a deed of trust (the "Deed of Trust") recorded among the Land Records for Montgomery County, Maryland, at Liber 28381, Folio 285. A copy of the Deed of Trust is attached as **Exhibit 2**. The Deed of Trust is a public record that this Court may consider without converting this Motion into a motion for summary judgment. *See, e.g.*, *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record.").

Plaintiff alleges that her annual income was reduced from $166,000 to $103,000 in late 2012 and early 2013, which resulted in her inability to make timely monthly payments under the Loan. Compl. ¶¶ 9, 10. Plaintiff alleges that she contacted Wells Fargo in February 2013 to inquire about options for a home loan modification. *Id.* ¶ 10. Plaintiff alleges that she was informed verbally over the telephone that she was ineligible for a loan modification under

[2] The allegations in the Complaint are taken as true for the purposes of the instant Motion.

HAMP or a refinance under HARP. *Id.* ¶¶ 11-14.

Plaintiff asserts that she sent correspondence to Wells Fargo on April 25, 2013, concerning the reasons underlying her ineligibility for assistance under the Making Home Affordable Program. *Id.* ¶ 15, Ex. A. Plaintiff characterizes the correspondence as a "qualified written request" under RESPA. *Id.* She acknowledges that Wells Fargo responded twelve (12) days later on May 7, 2013. *Id.* ¶ 16, Ex. B. Plaintiff alleges that she sent additional correspondence on May 30, 2013, requesting clarification concerning Wells Fargo's May 7, 2013, response. *Id.* ¶¶ 18-19, Ex. C. Wells Fargo allegedly responded on June 21, 2013, incorporating by reference the contents of its prior response. *Id.* ¶ 20, Ex. D. Plaintiff alleges that her counsel sent a "Letter of Intent" on February 6, 2014, which characterized Plaintiff's initial letter as a "request[] for information regarding the denial of her loan modification application," and threatened various causes of action that Plaintiff now asserts against Wells Fargo in the Complaint. *Id.* ¶ 21, Ex. G. In essence, Plaintiff alleges that Wells Fargo did not adequately explain the reasons underlying her unsuccessful request for assistance under the Making Home Affordable Program.

Based on these allegations, Plaintiff asserts the following causes of action against Wells Fargo: (1) a violation of RESPA, codified at 12 U.S.C. §§ 2601, *et seq.*; (2) a violation of the MCPA, codified at Maryland Code, Commercial Law § 13-101, *et seq.*; (3) negligence; (4) negligent supervision; (5) fraudulent concealment; and (6) respondeat superior. *See generally* Compl. As demonstrated below, all these claims should be dismissed with prejudice.

## **STANDARD OF REVIEW**

Fed. R. Civ. P. 12(b)(6) requires dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds

of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). Conclusory statements are not accepted as true. *Id*. Bare assertions, along with unwarranted inferences, unreasonable conclusions, or arguments will not be considered. *Ashcroft v. Iqbal*, 556 U.S. 662, 681-82 (2009); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009). Further, when considering a motion to dismiss, the Court is not required to accept legal conclusions in a complaint. *Iqbal*, 556 U.S. at 678 (citation omitted).

## ARGUMENT

### I. PLAINTIFF FAILS TO ALLEGE FACTS SUFFICIENT TO STATE HER COUNT I RESPA CLAIM.

#### A. Plaintiff Cannot Maintain A Claim Under Section 2609 Of RESPA.

Plaintiff's claim under Section 2609(a) and (c)(2) of RESPA fails as a matter of law. Section 2609 is titled "Limitation on requirement of advance deposits in escrow accounts" and governs the circumstances in which the lender, in connection with a federally related mortgage loan, may require the borrower to maintain an advance escrow account. *See* 12 U.S.C. § 2609(a). Section 2609(c)(2) dictates the contents of annual escrow account statements that the servicer must send the borrower once the servicer has established or continued an escrow account in connection with a federally related mortgage loan. *See id*. § 2609(c)(2). Plaintiff's allegations do not remotely relate to an escrow account. *See generally* Compl.

Even assuming Plaintiff's claims were somehow related to an escrow account, her claims nevertheless fail because RESPA does not provide a private right of action for any alleged violation of Section 2609 relating to escrow accounts. *See Clayton v. Raleigh Fed. Sav. Bank*, 107 F.3d 865 (Table), 1997 WL 82624, *1 (4th Cir. Feb.27, 1997); *McKinney v. Fulton Bank*,

776 F. Supp. 2d 97, 103 (D. Md. 2010); *Shirley v. Buonassissi Henning & Lash, PC*, 2011 WL 4352106, *3 (D. Md. Sept. 15, 2011). Plaintiff therefore cannot allege facts sufficient to maintain a claim under Section 2609 of RESPA and the claim must be dismissed with prejudice.

**B. <u>Plaintiff Cannot Maintain A Claim Under Section 2605 Of RESPA.</u>**

Nor can Plaintiff assert a claim under Section 2605(e) of RESPA because she fails to allege the required elements of such a claim. Specifically, Plaintiff must adequately plead that she sent Wells Fargo a qualified written request ("QWR"), that Wells Fargo did not properly respond to the QWR, and that Plaintiff suffered damages as a result of the failure to respond. *See* 12 U.S.C. § 2605(e). Here, Plaintiff does not plead facts sufficient to establish that her letters were QWRs under RESPA or that she has suffered any cognizable damages as a result of Wells Fargo's alleged conduct. Plaintiff's RESPA claim should be dismissed in its entirety.

**1. Plaintiff's Letters Were Not Qualified Written Requests.**

Plaintiff alleges that the correspondence she sent to Wells Fargo on April 25, 2013, and May 30, 2013, seeking clarification as to why her loan modification was denied, constitute QWRs. Compl. ¶¶ 15-20. Plaintiff contends that Wells Fargo's responses to her purported QWRs violated RESPA because Wells Fargo construed the correspondence as a series of litigation-related discovery requests and refused to substantively respond. *Id*. ¶¶ 28-29. Plaintiff's bald characterization of her letters as QWRs is unsupportable because the letters were nothing more than requests for information regarding her ineligibility to modify the Loan under the Making Home Affordable Program.

For correspondence to qualify as a QWR, it must relate to the "servicing" of the Loan as that term is defined in RESPA. *See* 12 U.S.C. § 2605(e) ("If any servicer of a federally related mortgage loan received a qualified written request from the borrower . . . for information *relating to the servicing of such loan* . . . .") (emphasis added). "Servicing" is defined as "receiving any

scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id.* § 2605(i)(3); *Dides v. Ocwen Loan Servicing, LLC*, 2013 WL 2285371, *2 (D. Md. May 21, 2013) ("[T]he permissible scope of Qualified Written Requests under RESPA is limited to information related to the servicing of loans, specifically the receipt of payments from a borrower and the making of payments of principal and interest.").

Despite Plaintiff's self-serving characterization of her correspondence, courts construing the connection between RESPA and the Making Home Affordable Program have held that a request seeking loan modification information does not qualify as a QWR. *See, e.g., Van Egmond v. Wells Fargo Home Mortg.*, 2012 WL 1033281, *4 (C.D. Cal. Mar. 21, 2012) (holding that the borrower's correspondence was not a QWR to the extent that it was "clearly a request for information pertaining to his failed attempt at a loan modification"); *Williams v. Wells Fargo Bank, N.A.*, 2010 WL 1463521, *3 (N.D. Cal. Apr. 13, 2010) (dismissing RESPA claim where correspondence requested documents relating to borrower's "options" for modification, and noting that "[n]ot all requests that relate to the loan are related to the servicing of the loan"); *Saucedo v. Bank of Am., N.A.*, 2011 WL 6014008, *2 (D. Or. Dec. 1, 2011) ("The denial of a loan modification is not 'servicing.'"); *In re Salvador*, 456 B.R. 610, 623 (Bankr. M.D. Ga. 2011) (holding RESPA does not obligate servicers to respond to information requests pertaining to failed attempt to modify loan because such information is "outside the scope of the term 'servicing'" as defined by RESPA).

The allegations in the Complaint establish that Plaintiff's correspondence was a request for information pertaining to her failed attempt to modify the Loan. Compl., Ex. A ("I believe that servicing of the mortgage is not allowing for the loan to be modified."); *id.* Ex. C ("On or

about April 25, 2013, [Plaintiff] submitted a qualified written request . . . to [Wells Fargo] requesting information regarding the denial of her loan modification application.”). Wells Fargo was not obligated to respond to Plaintiff's requests regarding her loan modification because the correspondence did not pertain to “the receipt of payments from a borrower and the making of payments of principal and interest” as required by RESPA. *Dides*, 2013 WL 2285371 at *2; *Salvador,* 456 B.R. at 623 (“[T]o the extent that [Plaintiff's] RESPA claim relates to a request for information relating to the failed attempt to modify the Loan under HAMP, [Defendant] is entitled to judgment on the pleadings.”). The law thus establishes that Plaintiff’s letters were not QWRs and did not trigger any duty to respond by Wells Fargo. According, Plaintiff’s RESPA claim must be dismissed.

**2. Even If Plaintiff’s Letters Were Qualified Written Requests, Plaintiff Fails to Allege Facts Sufficient To State A Claim That Wells Fargo Violated RESPA.**

Even if Plaintiff’s letters constituted QWRs, the allegations in the Complaint establish that Wells Fargo responded in a legally sufficient manner under RESPA. Once a servicer receives a QWR, the servicer may comply with RESPA by acknowledging receipt of the QWR within twenty (20) days and responding within thirty (30) days by: (1) correcting the account, if applicable; (2) providing a statement of the reasons for which the servicer believes the account is correct; (3) providing the information requested by the borrower; or (4) providing a written explanation as to why the requested information is unavailable or cannot be obtained by the servicer. *See* 12 U.S.C. § 2605(e)(2).

Although Wells Fargo was not required to respond to Plaintiff’s correspondence at all, Wells Fargo responded to Plaintiff’s April 25, 2013, correspondence on May 7, 2013. Compl. ¶ 16, Ex. B. The response correctly explained to Plaintiff, in accordance with 12 U.S.C. 2605(e)(2)(c)(i), that she was not entitled to the requested information. *Id*., Ex. B. The response

invited Plaintiff to contact Wells Fargo to discuss any specific aspects of the servicing of the Loan. *Id*. ("Please note that 12 U.S.C. 2605(e) affords a borrower a method of disputing and challenging a specific error with the servicing of a loan. *If you have a specific dispute with the servicing of the loan, please call so that we can discuss and reach a resolution to the matter*.") (emphasis added). Plaintiff does not allege that she accepted Wells Fargo's invitation; instead, she sent follow-up correspondence on May 17, 2013, arguing the semantics of Wells Fargo's May 7, 2013, response. *Id*., Ex. C.[3] Even though Plaintiff's May 17, 2013, correspondence was not a QWR, Wells Fargo nevertheless responded on June 21, 2013, by incorporating by reference the contents of its previous response. *Id.* ¶ 20, Ex. D. Plaintiff's apparent dissatisfaction with Wells Fargo's response to her letters, even assuming for the sake of argument that they constituted QWRs, does not amount to an actionable claim under RESPA. Indeed, Plaintiff's allegations establish that Wells Fargo did not violate RESPA and that her RESPA claim therefore must be dismissed with prejudice.

#### 3. Plaintiff Fails to Allege Sufficient Damages to Support Her RESPA Claim.

Even if the Complaint did adequately allege that Plaintiff made one or more QWRs and Wells Fargo failed to adequately respond, Plaintiff fails to allege she suffered damages sufficient to sustain a claim under RESPA. "Courts in this circuit have consistently read Section 2605 to require pleading statutory or actual damages to state a claim under RESPA." *Luther v. Wells Fargo Bank, N.A.*, 2012 WL 4405318, *7 (W.D. Va. Aug. 6, 2012) (collecting cases within the Fourth Circuit and recommending dismissal because plaintiff's conclusory allegation of "actual damages" is insufficient to show plausibly that actual damages arose from the servicer's failure to respond to the QWR), adopted by 2012 WL 4405128 (W.D. Va. Sept. 25, 2012); *see also* 12

[3] Plaintiff's February 6, 2014, Letter of Intent contained similar argumentative language. *See* Compl., Ex. G.

U.S.C. § 2605(f)(1). Because Plaintiff fails to allege facts sufficient to show she suffered actual damages or is entitled to statutory damages, her RESPA claim must be dismissed.

**a. Plaintiff has not alleged actual damages.**

To state a claim for actual damages, Plaintiff must have pled the specific "pecuniary loss attributable to the purported RESPA violation." *See Boston v. Ocwen Loan Servicing, LLC*, 2013 WL 122151, *5 (W.D.N.C. Jan. 9, 2013). A plaintiff's mere "assertion of damages without any supporting facts as to how they were damaged is insufficient to establish a claim for violation of RESPA." *In re Ginn*, 465 B.R. 84, 95-96 (Bankr. D.S.C. 2012).

Plaintiff alleges only that she "suffered loss of time and convenience, mental anguish and emotional distress, and ongoing financial injury." Compl. ¶ 31. Plaintiff does not allege any supporting facts that establish (1) the nature and amount of her supposed injuries, or (2) how Wells Fargo's alleged RESPA violation caused them. Without these supporting facts, Plaintiff has not met the *Iqbal/Twombly* standard. *Twombly*, 550 U.S. at 555 (holding that conclusory statements are not accepted as true for the purposes of a motion to dismiss); *Iqbal*, 556 U.S. at 681-82 (holding that bare assertions, along with unwarranted inferences, unreasonable conclusions, or arguments will not be considered). Indeed, there is ample precedent for dismissing RESPA claims that are based on thinly-pled damages claims like those alleged here. *See, e.g., McCray v. Fed. Home Loan Mortg. Corp.*, 2014 WL 293535, *14 (D. Md. Jan. 24, 2014) (dismissing RESPA claim to the extent that the borrower "simply alleges emotional distress without supporting facts" on the grounds that such allegations are "insufficient to satisfy the specificity by which emotional distress claims must be stated") (quoting *Luther*, 2012 WL 4405318, *7 n.6; *Ross v. FDIC*, 625 F.3d 808, 818 (4th Cir.2010) ("[C]onclusory statements that the plaintiff suffered emotional distress do not support an award of compensatory damages.")); *Bishop v. Quicken Loans, Inc.*, 2010 WL 3522128, *6 (S.D. W.Va. Sept. 8, 2010) ("Although

plaintiffs allege that they 'have suffered financial loss, annoyance and inconvenience,' plaintiffs do not allege how [the defendant's] failure to comply with RESPA caused them harm."); *Bonadio v. PHH Mortg. Corp.*, 2014 WL 522784, *6 (S.D.N.Y. Jan. 31, 2014) (dismissing RESPA claim without specific allegations of causation underlying alleged damages for "time spent and inconvenience" and "emotional distress and mental anguish"); *Garvey v. Am. Home Mortg. Servicing Inc.*, 2009 WL 2782128, *1 (D. Ariz. Aug. 31, 2009) (dismissing RESPA claim where the borrowers claimed "actual economic pecuniary loss, time and inconvenience damages, [and] emotional distress damages" without any factual allegations to support those claims).

Moreover, Plaintiff cannot seek damages under RESPA to the extent that her claim is based on the information that she sought concerning the Making Home Affordable Program. It is unclear from Plaintiff's vague assertion of "ongoing financial injury," *see* Compl. ¶ 31, but Plaintiff appears to allege that Wells Fargo's purported failure to respond to her inquiries hindered her ability to obtain loan modification assistance. Plaintiff cannot maintain such an action under RESPA. This Court's decision in *Offiah v. Bank of Am., N.A.*, 2014 WL 4295020 (D. Md. Aug. 29, 2014), is instructive. In *Offiah*, borrowers unsuccessfully sought a HAMP modification and later sent the servicer a letter requesting twenty-five (25) categories of documents and information. *Offiah*, 2014 WL 4295020 at *1. The borrowers were unsatisfied with the servicer's response and initiated a RESPA claim, asserting that the servicer's alleged "failure to respond to their December 2012 letter affected their request for modification . . . ." *Id.* at *2. This Court rejected the borrowers' theory and dismissed their claims, holding that "Plaintiffs have no legal or statutory right to a loan modification under HAMP." *Id.* at *3 (quotation marks omitted). Similarly here, Plaintiff cannot recover damages under RESPA based

on her inability to obtain assistance under the Making Home Affordable Program.[4] Plaintiff's RESPA claim therefore should be dismissed with prejudice.

**b. Plaintiff has not alleged facts sufficient to establish that she is entitled to statutory damages.**

Nor has Plaintiff set forth sufficient factual allegations to show that she is entitled to statutory damages based on any alleged non-response by Wells Fargo to her letters, even assuming they were QWRs under RESPA. A borrower may recover statutory damages only where a loan servicer has demonstrated a "pattern or practice of noncompliance with the requirements of [RESPA]." 12 U.S.C. § 2605(f)(1); *Yacoubou v. Wells Fargo Bank, N.A.*, 901 F.Supp.2d 623, 632 (D. Md. 2012), *aff'd* 521 Fed. Appx. 177 (4th Cir. 2013). "Pattern or practice" means "a standard or routine way of operating." *McLean v. GMAC Mortg. Corp.*, 595 F.Supp.2d 1360, 1365 (S.D. Fla. 2009) (holding that a failure to respond to two QWRs was "insufficient to support a pattern or practice of noncompliance as required by section 2605(f)"); *In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (same); *Garvey*, 2009 WL 2782128 at *2 (rejecting statutory damages based on alleged continual refusal to respond to one QWR).

Plaintiff does not allege that Wells Fargo engaged in a pattern or practice of noncompliance with the requirements of RESPA. Rather, she simply alleges that Wells Fargo, at worst, did not respond substantively to one written request from Plaintiff – the initial letter on April 25, 2013. Plaintiff's correspondence dated May 30, 2013 (to which Wells Fargo also responded), was nothing more than a letter from Plaintiff arguing the semantics of Wells Fargo's response to her April 25, 2013 letter, and the letter from Plaintiff's counsel on February 6, 2014, was a threat of litigation based on Wells Fargo's responses to Plaintiff's letters. *See* Compl., Exs. A, C, and G. These facts do not constitute allegations sufficient to show a "pattern or

[4] Plaintiff's inability to maintain a private cause of action under the Making Home Affordable Program is explained in detail in Section II of this Memorandum, *infra*.

practice of noncompliance" with RESPA and therefore fail to show an entitlement to statutory damages. *See, e.g.*, *McLean*, 595 F.Supp.2d at 1365 (holding that a failure to respond to two QWRs was "insufficient to support a pattern or practice [under] section 2605(f)"). Plaintiff's RESPA claim therefore must be dismissed

## II. PLAINTIFF'S COUNT II MCPA CLAIM MUST BE DISMISSED BECAUSE NO PRIVATE CAUSE OF ACTION EXISTS FOR ALLEGED VIOLATIONS OF SERVICING GUIDELINES UNDER THE MAKING HOME AFFORDABLE PROGRAM.

Plaintiff's effort to shoehorn Wells Fargo's alleged refusal to grant her a HAMP modification into a state law MCPA claim fails as a matter of law because there is no private right of action under the Making Home Affordable Program under the facts alleged in the Complaint. Plaintiff's MCPA claim therefore should be dismissed.

"It is well-established that no private cause of action exists under HAMP for alleged violations of the servicing guidelines." *See Sheard v. Bank of Am., N.A.*, 2012 WL 3025119, *3 (D. Md. July 23, 2012) (collecting decisions from this Court holding that there is no private cause of action under HAMP); *Allen v. CitiMortgage, Inc.*, 2011 WL 3425665, *8 (D. Md. Aug. 4, 2011) (dismissing claims based on HAMP violations). Rather, "[c]ompliance oversight [of HAMP's guidelines] is delegated to Freddie Mac." *Legore v. OneWest Bank*, FSB, 2012 WL 4903087, *5 (D. Md. Oct. 15, 2012); *Cade v. BAC Home Loans Servicing, LP*, 2011 WL 2470733, *5 (S.D. Tex. June 20, 2011) ("There is no private right of action under HAMP. Only the government can enforce compliance with HAMP regulations, and it is not required to do so."); *Correll v. Bank of Am., N.A.*, 2012 WL 348594, *4 (E.D. Va. Feb. 2, 2012 ) (same).

"A plaintiff cannot circumvent the intent of the legislature by recasting alleged HAMP violations as alternative causes of action." *Ramos v. Bank of Am., N.A.*, 2012 WL 5928732, *4 (D. Md. Nov. 26, 2012). In *Ramos*, the plaintiff asserted eleven (11) causes of action against

Bank of America, N.A. after the bank denied the plaintiff's request for a loan modification. *Id.* at *1. The plaintiff asserted a claim under the MCPA because the bank allegedly "den[ied] her loan modification, fail[ed] to maintain adequate staff to help Plaintiff with her application, and generally prevent[ed] Plaintiff from obtaining a loan modification—all for the purpose of charging Ramos additional fees and penalties." *Id.* at *4. This Court dismissed the plaintiff's claims, holding:

> In essence, all of Plaintiff's factual allegations assert that Defendants acted improperly pursuant to the HAMP guidelines. [H]owever, Congress did not create a private right of action to enforce HAMP. A plaintiff cannot circumvent the intent of the legislature by recasting alleged HAMP violations as alternative causes of action. *See, e.g., Parks v. BAC Home Loan Servicing, LP*, 825 F.Supp.2d 713, 716 (E.D. Va. 2011) (dismissing a claim for breach of the implied duty of good faith and fair dealing "as it is merely another attempt to recast the HAMP claim"). Because they rely exclusively on Defendants' alleged HAMP violations, Plaintiff's unjust enrichment and MCPA claims are not cognizable and will be dismissed with prejudice.

*Id.*; *Ramos v. Wells Fargo Home Mortg.*, 2012 WL 261308, *3 (D. Md. Jan. 26, 2012) (dismissing various claims, including a claim under the MCPA, because they "arise out of [the defendants'] alleged failure to follow the HAMP procedures set forth by the Treasury Department to determine whether a party is eligible for a loan modification") (citing *Akinoye v. Wells Fargo Home Mortg.*, 2011 WL 6180210, *4–5 (D. Md. Dec.12, 2011)).

Plaintiff's MCPA claim is based on her attempt to obtain a loan modification, the denial of the requested modification, and her subsequent desire to appeal the denial. Compl. ¶¶ 38-42. These are precisely the type of claims consistently rejected by this Court. *See, e.g.*, *Sheard*, 2012 WL 3025119 at *3 (denying MCPA claim asserting loan review failures related to HAMP); *Ramos*, 2012 WL 5928732 at *4 (same); *Allen*, 2011 WL 3425665 at *8 (same); *Legore*, 2012 WL 4903087 at *5 (same); *Ramos*, 2012 WL 261308, *3 (same); *Akinoye*, 2011 WL 6180210 at

*4–5 (same). Accordingly, Plaintiff has not alleged facts sufficient to state a claim under the MCPA. Plaintiff's MCPA claim therefore must be dismissed with prejudice.

## III. PLAINTIFF FAILS TO ALLEGE FACTS SUFFICIENT TO MAINTAIN HER COUNT VI, VII, AND IX CLAIMS FOR NEGLIGENCE, NEGLIGENT SUPERVISION AND FRAUDULENT CONCEALMENT.[5]

Plaintiff asserts negligence, negligent hiring, and fraudulent concealment claims based on her conclusory allegations that Wells Fargo held itself "out as professionals in the mortgage industry, deserving of trust and confidence, and holding itself out as the Servicer of [Plaintiff's] home mortgage account, and as such, owed a legal duty to exercise reasonable case in their dealings with [Plaintiff] and to disclose all material terms of the mortgage account to [Plaintiff]." Compl. ¶¶ 44, 55. Plaintiff asserts that this duty was breached when Wells Fargo:

1. Misrepresented to Plaintiff that it participates in HAMP while engaging in "incompetent lending practices by pretending that options exist for borrowers to apply for loan modification and refinancing, but then denying borrower applications without explanation or justification and refusing to provide a method for borrowers to appeal or challenge the denial decision" (*Id*. ¶¶ 46, 55); and

2. Failed to substantively respond to Plaintiff's request for clarification on the HAMP decision (*Id*. ¶¶ 46, 57).

Plaintiff bases her negligent hiring claim on Wells Fargo's alleged failure to oversee its employees in connection with the above-stated activities. *Id*. ¶¶ 50-51. All of Plaintiff's tort claims fail because: (1) Maryland law does not recognize any tort duty of care owed by Wells Fargo as the lender/servicer to Plaintiff as the borrower; and (2) Plaintiff's claimed damages are nothing more than an attempt to assert a private cause of action under HAMP in the form of negligence and fraudulent concealment claims, which is impermissible under Maryland law.

[5] The Complaint does not contain a count III, IV, V, or VIII.

### A. Wells Fargo Did Not Owe Plaintiff A Duty Such That She Can Maintain Claims For Negligence, Negligent Hiring, Or Fraudulent Concealment.

Plaintiff's claims against Wells Fargo fail because Wells Fargo did not owe Plaintiff any duty recognized by Maryland law. To state a negligence claim, Plaintiff must allege facts that show: (1) Wells Fargo was under a duty to protect Plaintiff from injury; (2) Wells Fargo breached that duty; (3) Plaintiff suffered actual injury or loss; and (4) the loss or injury proximately resulted from Wells Fargo's breach of the duty. *Jacques v. The First Nat'l Bank of Md.*, 307 Md. 527, 531 (1986); *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 131-32 (2007) (quoting *Valentine v. On Target*, 353 Md. 544, 549 (1999)). Similarly, the elements for a fraudulent concealment claim include: "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." *Green v. H & R Block*, 355 Md. 488, 525 (1999). The existence of a legally cognizable duty owed to Plaintiff by Wells Fargo is essential to each cause of action. *Rosenblatt* v. *Exxon*, 335 Md. 58, 76 (1994); *Green*, 355 Md. at 525. But Plaintiff fails to allege fact sufficient to establish any such duty.

"It is well established that 'the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor and is not fiduciary in nature.'" *Kuechler v. Peoples Bank*, 602 F.Supp.2d 625, 633 (D. Md. 2009) (quoting *Yousef v. Trustbank Savs., F.S.B.*, 81 Md. App. 527 (1990)); *Parker v. Columbia Bank*, 91 Md. App. 346, 368, 374 (1992) (same). Maryland law is equally clear that "[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Jacques*, 307 Md. at 534; *Mesmer v. MAIF*, 353 Md. 241, 253 (1999) ("[N]egligent breach of a contract, absent a duty or

obligation imposed by a source independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort.") (citations omitted).

This Court's decision in *Boardley v. Household Finance Corp. III*, 2014 WL 4080169 (D. Md. Aug. 14, 2014), is instructive. In *Boardley*, the plaintiff filed a complaint against his mortgage lender for an alleged scheme whereby the lender lured the borrower into a loan agreement with monthly payments higher than the borrower could afford with the understanding that they could later refinance. *Boardley*, 2014 WL 4080169 at *1. After the borrower was unable to secure a refinance, he sued the lender for negligence, negligent supervision, and fraudulent concealment (among other claims) based on an alleged duty remarkably similar to the duties alleged here. *Compare Boardley*, 2014 WL 4080169 at *20, *with* Compl. ¶¶ 44-46, 50-51, 55-57. This Court dismissed the plaintiff's claims, holding that

> [t]he fault in Plaintiffs' argument is that there is no universal duty to exercise reasonable care. . . . Rather, tort liability exists only where the law will give recognition and effect to an obligation . . . to conform to a particular standard of conduct toward another. . . . Significantly, absent that duty, there can be no negligence.

*Boardley*, 2014 WL 4080169 at *21 (citations and internal quotations omitted). Citing the well-established body of Maryland law that the contractual relationship between a bank and its customer, by itself, cannot form the basis for a tort action, the Court concluded that the plaintiff "failed to establish the duty element of their claims for negligence, negligent supervision, and fraudulent concealment." *Id.* at * 22; *see also Allen*, 2011 WL 3425665 at *8 (no fiduciary duty between servicer and borrower); *Ramos*, 2012 WL 1999867 at *5 (dismissing negligence claim against servicer) (citation omitted); *Goss v. Bank of Am., N.A.*, 917 F.Supp.2d 445, 452 (D. Md. 2013) (dismissing negligence and negligent misrepresentation claims because the bank did not owe the plaintiff any duty in arising from its handling of the plaintiff's HAMP application).

Here, there is no fiduciary relationship between Wells Fargo and Plaintiff – Wells Fargo is the lender and Plaintiff is the borrower, nothing more. Compl. ¶ 6. Maryland precedent is clear that, absent additional circumstances, the servicer/borrower relationship does not impose a fiduciary duty on Wells Fargo. *See, e.g.*, *Boardley*, 2014 WL 4080169 at *21-22. Plaintiff has not alleged any facts that would create a duty owed to her by Wells Fargo outside the contractual relationship created by the Loan documents. *Jacques*, 307 Md. at 531; *Kuechler*, 602 F. Supp. 2d at 634-35. Because Plaintiff cannot establish that Wells Fargo owed her any duty of care, her claims for negligence, negligent supervision, and fraudulent concealment must be dismissed.

**B. Plaintiff's Tort Damage Claims Are Futile Attempts To Plead Around The Fact That Private Causes Of Action Are Not Available To Enforce HAMP Servicer Guidelines.**

As set forth above, "no private cause of action exists under HAMP for alleged violations of the servicing guidelines." *Ramos*, 2012 WL 5928732 at *4 ("A plaintiff cannot circumvent the intent of the legislature by recasting alleged HAMP violations as alternative causes of action."); *Sheard*, 2012 WL 3025119 at *3; *Allen*, 2011 WL 3425665 at *8; *Legore*, 2012 WL 4903087 at *1; *Cade*, 2011 WL 2470733 at *5; *Correll*, 2012 WL 348594 at *4. Plaintiff's asserted damages underlying her negligence, negligent supervision, and fraudulent concealment claims make clear that those claims are thinly-veiled attempts to enforce the provisions of the Making Home Affordable Program. All three claims should be dismissed with prejudice.

Specifically, Plaintiff asserts that Wells Fargo negligently handled her request for assistance under the Making Home Affordable Program, which "directly led to [Plaintiff] being subjected to an increased debt, higher payments, and potential foreclosure of her home." Compl. ¶ 47. Similarly, Plaintiff asserts that Wells Fargo's alleged "fraudulent concealment" was somehow "intended to deceive [Plaintiff] in order to convince her to not pursue further attempts to obtain a loan modification, regardless of [Plaintiff's] inability to pay," and "trapped [Plaintiff]

into a loan with monthly mortgage payments far in excess of what [Plaintiff] is able to pay." *Id.* ¶¶ 58. Thus, Plaintiff's alleged damages are based purely on her inability to qualify for a modification and/or refinance of the existing Loan.

Plaintiff cannot maintain her causes of action for negligence, negligent hiring, or fraudulent concealment against Wells Fargo to the extent that her claimed damages are based on an alleged failure to adhere to the guidelines governing loan modifications under the Making Home Affordable Program. *Ramos*, 2012 WL 5928732 at *4 ("A plaintiff cannot circumvent the intent of the legislature by recasting alleged HAMP violations as alternative causes of action."); *Sheard*, 2012 WL 3025119 at *3 (dismissing all counts of complaint, including those for negligence, where the alleged wrong was based on the defendant's alleged failure to follow HAMP procedures when evaluating her loan modification application); *Legore*, 2012 WL 4903087 at *5 (dismissing negligence and negligence misrepresentation claims where the borrower's claim were based on the HAMP loan modification process). Plaintiff has no statutory or common law right to the damages that she seeks in the Complaint and her claims for negligence, negligent hiring, and fraudulent concealment must be dismissed.

## CONCLUSION

For the reasons set forth above, Defendant Wells Fargo Bank, N.A., respectfully requests that this Court issue an Order: (A) Granting this Motion to Dismiss the Complaint; (B) Dismissing this action with prejudice; and (C) Granting such other and further relief that this Court deems just and fair.

**[SIGNATURE PAGE FOLLOWS]**

Dated: October 1, 2014

/s/

Jessica Morrison (Fed. Bar No. 26824)
Craig R. Haughton (Fed. Bar No. 28585)
**MCGUIREWOODS LLP**
7 Saint Paul Street, Suite 1000
Baltimore, Maryland 21202
(410) 659-4400
(410) 659-4472 (Fax)
jmorrison@mcguirewoods.com
chaughton@mcguirewoods.com

***Counsel for Defendant***
***Wells Fargo Bank, N.A.***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2014, copies of the foregoing Motion to Dismiss Plaintiff's Complaint, Memorandum in Support, and Proposed Order were electronically filed and served through the CM/ECF system on the following:

Tyler Jay King
Franklin Square Law Group
1407 Nicholson St., NW
Washington, DC 20011

/s/

Craig R. Haughton