IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JACQUELINE DAVENPORT, | * | |
| Plaintiff | * | |
| v. | * | |
| | * | Civil No. PJM 14-2369 |
| WELLS FARGO HOME MORTGAGE, *et al.* | * | |
| Defendants | * | |

## MEMORANDUM OPINION

Jacqueline Davenport has sued Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage Division (collectively, "Wells Fargo"), alleging (1) violation of the Real Estate Settlement Procedures Act (RESPA), (2) violation of the Maryland Consumer Protection Act (MCPA), (3) negligence, (4) negligent supervision, and (5) fraudulent concealment, all of which are related to Wells Fargo's denial of her request for a loan modification. Wells Fargo has filed a Motion to Dismiss (ECF No. 21). The Court **GRANTS** Wells Fargo's Motion for the following reasons.

I.

The facts are alleged in the Amended Complaint:

In late 2012 and early 2013, Davenport's annual income dropped from $166,000 to $103,000. Am. Compl. ¶ 8. She contacted Wells Fargo, her mortgage servicer, and inquired as to whether she was eligible to modify her home loan under the Home Affordable Modification Program (HAMP) or the Home Affordable Refinance Program (HARP). *Id.* ¶¶ 9-11. A Wells Fargo representative informed her that she did not qualify for either program, but provided no

further explanation. *Id.* ¶¶ 12-14. On April 25, 2013, Davenport then sent Wells Fargo a letter that she characterized as a Qualified Written Request (QWR), pursuant to § 2605(e) of RESPA, requesting information as to why it denied her request. Compl. Ex. A at 1.[1]

On May 7, 2013, Wells Fargo responded to the letter, stating, "Although you have referred to your letter as a 'Qualified Written Request' under [RESPA], it appears that your request is more of an attempt at discovery." *Id.* Ex. B at 1. Wells Fargo advised Davenport that 12 U.S.C. § 2605(e) provides a detailed method for disputing specific errors with servicing of a loan and her letter did not meet the requirements. *Id.* On May 30, 2013, Davenport sent another purported QWR, requesting the same information as in her first letter and taking issue with Wells Fargo's previous response. *Id.* Ex. C at 1-2. Wells Fargo replied to the second letter on June 21, 2013, advising Davenport that its response to her first letter already addressed her concerns. *Id.* Ex. D at 1.

On July 25, 2014, Davenport filed a Complaint against Wells Fargo in this Court, which she amended on November 7, 2014. The Amended Complaint consists of five Counts: (1) violation of RESPA, (2) violation of the MCPA, (3) negligence, (4) negligent supervision, and (5) fraudulent concealment. The Court considers Wells Fargo's Motion to Dismiss.

## II.

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards," requiring only that a plaintiff submit a "short and plain statement of the claim showing that [he or she] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing Fed. R. Civ. P. 8(a)(2)). If pleadings allege fraud or mistake, "a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). Under the heightened pleading standard of Rule 9(b), "[t]hese circumstances are 'the time, place, and contents of the false

---

[1] All exhibits referenced in the Amended Complaint are attached to the original Complaint.

representations, as well as the identity of the person making the misrepresentations and what [he or she] obtained thereby.'" *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombley*, 550 U.S. 554, 570 (2007). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A district court has the discretion to grant a motion to dismiss with or without prejudice. *Hinks v. Bd. of Educ. of Harford Cnty.*, 2010 WL 5087598, at *2 (D. Md. Dec. 7, 2010). Dismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his or her claim. *Id.* (citing *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008)).

### III.

#### A.

Davenport claims that Wells Fargo violated RESPA when it failed to properly respond to her two purported QWRs. She argues that her letters seeking information with respect to her request about modifying her home loan related to "servicing" of her loan, as provided by RESPA, because a loan modification affects a borrower's ability to make payments. Wells Fargo counters that Davenport's letters did not constitute QWRs under RESPA because they did not relate to "servicing" as defined in 12 U.S.C. § 2605(i)(3). The Court agrees with Wells Fargo.

RESPA imposes on loan servicers a duty to respond to borrowers' QWRs in writing and within prescribed time limits. 12 U.S.C. § 2605. A QWR requests information "relat[ed] to the

servicing of [a] loan." § 2605(e)(1)(A). In order to qualify as a QWR, however, a request must meet several statutory requirements:

> The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

§ 2605(i)(3); *Dides v. Ocwen Loan Servicing, LLC*, 2013 WL 2285371, at *2 (D. Md. May 21, 2013) ("[T]he permissible scope of [QWRs] under RESPA is limited to information related to the servicing of loans, specifically the receipt of payments from a borrower and the making of payments of principal and interest.") (citations omitted). A mere request for information on loan modifications does not constitute a QWR. *E.g.*, *Van Egmond v. Wells Fargo Bank, N.A.*, 2010 WL 1463521, at *3 (N.D. Cal. Apr. 13, 2010) ("Defendant was not obligated to respond to any of Plaintiff's requests regarding his loan modification.").

Here, Davenport's requests were unrelated to the "servicing" of her loan. She attempts to stretch the statutory language of "relating to the servicing of [a] loan" to bring her letters within RESPA's scope; however, her interpretation is at odds with both the statute and case law. Both requests ask for information concerning her failed attempt to modify her loan, as opposed to the servicing of her current loan. *See* Compl. Ex. A at 1 ("I believe that servicing of the mortgage is not allowing for the loan to be modified."); *Id.* Ex. C (restating her first letter and taking issue with Wells Fargo's response). Since the requests do not pertain to "the receipt of payments from a borrower and the making of payments of principal and interest" as required by RESPA, the letters were not QWRs. *See Dides*, 2013 WL 2285371, at *2. Accordingly, Wells Fargo had no duty to respond. The Court dismisses Davenport's RESPA claim.[2]

---

[2] Davenport's claim also fails because she does not plead actual damages, offering only conclusory allegations that Wells Fargo's actions caused her harm. Am. Compl. ¶ 34; *see Luther v. Wells Fargo Bank, N.A.*, 2012 WL 4405318, at *4 (W.D. Va. Aug. 6, 2012). Her mere assertion of "damages without any supporting facts as to how [she was]

4

**B.**

Davenport next argues that Wells Fargo violated the MCPA when it represented that it participated in HAMP but denied her loan modification request and failed to adequately respond to her requests for clarification. Wells Fargo replies that HAMP does not create a private cause of action for borrowers such as Davenport and that she cannot "shoehorn" Wells Fargo's alleged refusal to grant her HAMP modification into a state law MCPA claim. Again, Wells Fargo is correct.

"It is well-established that no private cause of action exists under HAMP for alleged violations of the servicing guidelines." *Sheard v. Bank of Am., N.A.*, 2012 WL 3025119, at *3 (D. Md. July 23, 2012). However, this principle is more appropriately stated as, "*[w]here a homeowner has not entered into any agreement under HAMP . . .* plaintiffs have no claim or cause of action to enforce HAMP . . . ." *Bowers v. Bank of Am., N.A.*, 905 F. Supp. 2d 697, 701 (D. Md. 2012) (emphasis added). This is true even when HAMP violations are fashioned as state law causes of action. *Sheard*, 2012 WL 3025119, at *3 (dismissing claims of fraud, conspiracy, unfair and deceptive trade practices, and violations of the MCPA that were premised on defendants' failure to comply with HAMP).[3]

Under HAMP, the federal government provides incentives to loan servicers to work with struggling mortgagors to modify existing loans. "[P]rospective borrowers enter into a standardized contract, called a Trial Period Plan (TPP), with lenders/servicers such as [Wells Fargo] for a three-month trial modification of the borrower's existing note and mortgage."

---

damaged is insufficient to establish a claim for violation of RESPA." *In re Ginn*, 465 B.R. 84, 95-96 (Bankr. D.S.C. 2012).

[3] The fact that HAMP does not provide a private right of action for alleged guideline violations does not mean that all state law claims that refer to or incorporate elements of HAMP are necessarily preempted. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 776 n.4 (4th Cir. 2013) (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012). However, a plaintiff cannot rely on a theory that by agreeing to participate in HAMP, lenders are subject to federally-defined legal duties that supplement existing state law principles and causes of action. *Id.*

*Ramos v. Bank of Am., N.A.*, 2012 WL 1999867, at *1 (D. Md. June 4, 2012). "The TPP promises that if the borrower complies with the terms of the agreement and the borrower's representations continue to be true in all material respects, then the borrower will receive a permanent modification on the same terms." *Id.* It is when the homeowner enters into a TPP under HAMP that the homeowner may be able to create legally enforceable contract rights. *Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 449 (D. Md. 2013).

Here, Davenport's MCPA claim concerns Wells Fargo's alleged failure to follow the HAMP guidelines. *See* Am. Compl. ¶ 44 ("The Defendant engaged in unfair and deceptive trade practice when [it] failed to respond to Plaintiff's reasonable request for more information regarding her loan modification."). Davenport never claims to have entered into a TPP or any other loan modification agreement with Wells Fargo and bases her claim entirely on Wells Fargo's evaluation of her loan modification request under HAMP. Her MCPA claim is merely an attempt to enforce HAMP guidelines in the guise of a state cause of action. This Court has consistently rejected these types of claims. *See, e.g.*, *Sheard*, 2012 WL 3025119, at *3 (dismissing MCPA claims asserting loan review failures related to HAMP); *Ramos*, 2012 WL 261308, at *3 (same). Davenport's MCPA claim is dismissed.

### C.

Finally, Davenport asserts claims of negligence, negligent supervision, and fraudulent concealment. Am. Compl. ¶¶ 46-65. Each of these three causes of action requires that Davenport allege facts showing Wells Fargo owed her a legally cognizable duty of care. *See Barclay v. Briscoe*, 47 A.3d 560, 574 (Md. 2012); *Green v. H & R Block, Inc.*, 735 A.2d 1039, 1059 (Md. 1999). Although Davenport admits that Maryland law does not typically recognize a duty of care owed by loan servicers to borrowers, she argues that Wells Fargo took on extra services on

behalf of borrowers by participating in HAMP, creating "special circumstances" under which Wells Fargo did owe her a duty. Wells Fargo responds that mere participation in loss mitigation services, like HAMP, is insufficient to establish a tort duty of care. Wells Fargo prevails yet again.

"It is well established that 'the relationship of a bank to its customers in a loan transaction is ordinarily a contractual relationship between debtor and creditor and is not fiduciary in nature.'" *Kuechler v. Peoples Bank*, 602 F. Supp. 2d 625 (D. Md. 2009) (quoting *Yousef v. Trustbank Savs., F.S.B.*, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990)). There are certain "special circumstances" that may give rise to a fiduciary duty between borrower and lender. *See Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 418 (Md. 2012). However, participation in loss mitigation services does not create such "special circumstances" sufficient to support a tort claim. *E.g., Goss*, 917 F. Supp. 2d at 448 (dismissing claims of negligence, negligent misrepresentation, promissory estoppel, breach of contract, fraud, and violation of the MCPA, which were based on the theory that a bank's participation in HAMP created a tort duty of care); *Matthews v. Wells Fargo Bank, N.A.*, 2012 WL 3903453, at *1 (D. Md. Sept. 6, 2012) (holding that a servicer's willingness to process a HAMP request does not give rise to any state law cause of action related to HAMP).

Davenport has not alleged circumstances that, by any construction, impose a duty on Wells Fargo as a lending institution. *See Boardley v. Household Finance Corp. III*, 2014 WL 4080169, at *22 (D. Md. Aug. 14, 2014). The Court therefore dismisses her claims for negligence, negligent supervision, and fraudulent concealment.[4]

---

[4] These claims also fail because they are no more than another attempt by Davenport to "circumvent the intent of the legislature by recasting alleged HAMP violations as alternative causes of action." *Ramos*, 2012 WL 5928732, at *4; *see also Sheard*, 2012 WL 3025119, at *3 (dismissing a claim of negligence based on defendant's alleged failure to follow HAMP procedures when evaluating a loan modification application).

## IV.

For the reasons stated above, the Court **GRANTS** Wells Fargo's Motion to Dismiss. The Amended Complaint is **DISMISSED WITH PREJUDICE**.

A separate Order will **ISSUE**.

/s/ Peter J. Messitte
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**July 17, 2015**